Erik Strindberg (Bar No. 4154)
Lauren I. Scholnick (Bar No. 7776)
Kathryn Harstad (Bar No. 11012)
Rachel E. Otto (Bar No. 12191)
**STRINDBERG & SCHOLNICK, LLC**
675 East 2100 South, Ste. 350
Salt Lake City, UT  84106
Telephone: (801) 359-4169
Facsimile: (801) 359-4313
erik@utahjobjustice.com
lauren@utahjobjustice.com
kass@utahjobjustice.com
rachel@utahjobjustice.com

John Mejia (Bar No. 13965)
Leah M. Farrell (Bar No. 13696)
**ACLU of Utah**
355 North 300 West
Salt Lake City, Utah 84103
Telephone: (801) 521-9862
Facsimile:
jmejia@acluutah.org
lfarrell@acluutah.org

Joshua A. Block*
**ACLU LGBT Project**
125 Broad Street, Floor 18
New York, New York, 10004
Telephone: (212) 549-2593
Facsimile: (212) 549-2650
jblock@aclu.org

*Attorneys for Plaintiffs*                                   *Admitted Pro hac vice

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT O FUTAH, CENTRAL DIVISION**

| | |
|---|---|
| **JONELL EVANS, STACIA IRELAND,MARINA GOMBERG, ELENOR HEYBORNE, MATTHEW BARRAZA, TONY MILNER, DONALD JOHNSON**, and **KARL FRITZ SCHULTZ,**<br><br>                    Plaintiffs,<br><br>vs.<br><br>**STATE OF UTAH, GOVERNOR GARY HERBERT**, in his official capacity; and **ATTORNEY SEAN REYES**, in his official capacity,<br><br>                    Defendants. | **MOTION TO CERTIFY QUESTIONS OF UTAH STATE LAW TO THE UTAH SUPREME COURTAND MEMORANDUM IN SUPPORT**<br><br><br>Case No. 2:140cv000055DAK |

Plaintiffs JoNell Evans, Stacia Ireland, Marina Gomberg, Elenor Heyborne, Matthew

Barraza, Tony Milner, Donald Johnson and Karl Fritz Schultz (collectively referred to as the

"Plaintiffs") by and through their undersigned attorneys, hereby move the Court to certify the following question of Utah law to the Utah Supreme Court:

## QUESTIONS OF LAW TO BE CERTIFIED

*1. Under Utah law, do same-sex couples who were legally married between December 20, 2013, and January 6, 2014 have vested rights in their marriage which are protected under [Article I, Section 7 of the Utah Constitution](#)?*

*2. Once the State of Utah recognized the marriages of same-sex couples entered into between December 20, 2013, and January 6, 2014, could it apply [Utah Code §30-1-4.1](#) and [Article I, Section 29 of the Utah Constitution](#) to withdraw that recognition?*

## STANDARD

Under Utah Rule of Appellate Procedure 41, the Utah Supreme Court may answer a question of Utah law certified to it by the Utah Federal District Court, so long as "the question certified is a controlling issue of law in a proceeding pending before the certifying court," and "there appears to be no controlling Utah law." [Utah R.App.P. 41](#). The Tenth Circuit has stated that certification is generally appropriate "where the question before us (1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance." *[Pino v. United States](#)*, 507 F.3d 1233, 1236 (10th Cir. 2007). "In making the assessment whether to certify, [the court] also seek[s] to give meaning and respect to the federal character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state, not federal, courts." *Id.*

Certification is particularly appropriate in this case because this Court will not need to reach Plaintiffs' federal constitutional claims if the Utah Supreme Court determines that Defendants' position is incorrect as a matter of state law. *See [Bellotti v. Baird](#)*, 428 U.S. 132,

150-51 (1976); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 78-79 (1997). As the Tenth Circuit has explained, certification "is consistent with our duties to avoid passing on the constitutionality of a statute where possible, and, in particular, to avoid considering the [c]onstitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts." *Kan. Judicial Rev. v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008) (internal quotation marks and citations omitted); *see also id.* at 1121 (certification proper where "[a] state court ruling . . . is also likely to moot or substantially modify the constitutional issues at stake"); *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir.2003) (finding certification particularly appropriate when state courts had not been presented with a constitutional challenge to the statute because the federal court "cannot know . . . whether [the state courts] would have concluded that there exists a less natural, but still permissible, reading of the statutes that avoids the constitutional issues we address here.")

## CONTROLLING QUESTION OF LAW AND
## LACK OF CONTROLLING UTAH LAW

As discussed below, the Plaintiffs in this case entered into legally recognized marriages in the State of Utah, after Judge Shelby in the *Kitchen* case enjoined enforcement of Utah Code§30-1-4.1 and Article I, Section 29 of the Utah Constitution. The Defendants recognized those marriages, but then withdrew that recognition when the U.S. Supreme Court stayed enforcement of Judge Shelby's Order on January 6, 2013. As a matter of Utah law, a marriage becomes valid upon solemnization and begins on the date of solemnization. *See Walters v. Walters*, 812 P.2d 64, 68 (Utah Ct. App. 1991), *see also State v. Giles,* 966 P.2d 872, 877 (Utah. Ct. App. 1998) (marriage valid from date of solemnization, even if officiant does not return certificate to county clerk). Plaintiffs contend that: under Utah law, they obtained vested rights in

their marriagesthe moment they solemnized their marriages in accordance with Utah law; that those vested rights are protected by the Due Process Clauses of the Utah and United States Constitutions; and that those marriages must continue to be recognized under Utah law regardless of the ultimate outcome of the *Kitchen* litigation. Plaintiffs further contend that Defendants' refusal to recognize Plaintiffs' marriage and the marriages of other legally married same-sex couples is not authorized by Utah law and violates the due process guarantees of the Utah Constitution and the Fourteenth Amendment.

      Central to Plaintiffs' claims is the issue raised in the first question: whether under Utah law they have vested rights in their marriages which are protected by the due process clauses of the Utah and federal constitutions. *See Miller v. USAA Cas. Ins. Co.*,44 P.3d 663, 674 (Utah 2002) (due process protection in Utah Constitution "is not confined to mere tangible property but extends to every species of vested right"). As early as 1892, the Utah Supreme Court recognized that marriage rights constitute "vested rights" under Utah law. Specifically, the Supreme Court examined "rights . . . [that] grew out of a contract governing the marriage relation," and it determined as follows: "When a right has arisen upon a contract, or a transaction in the nature of a contract, authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting it, . . . [i]t has then become a vested right." *Tufts v. Tufts*, 30 P. 309, 310 (Utah 1892) (quoting *Steamship Co. v. Joliffe*, 69 U.S. 450, 457-58 (1864)). Similarly, the California Supreme Court has held that same-sex couples (who were married after a court decision legalized same-sex marriage and before Proposition 8 was adopted) immediately acquired vested property rights under the California constitution. *Strauss v. Horton*, 207 P.3d 48, 122 (Cal. 2009); *cf. Cook v. Cook*,104 P.3d 857, 865 (Ariz. Ct. App. 2005); *Callahan v. Callahan*, 15 S.E. 727, 728(S.C. 1892). In sum, although marriage rights constitute "vested

rights" under Utah law, the question at issue here – whether the same-sex couples who were legally married between December 20, 2013, and January 6, 2014, have vested rights in their marriage – has not been explicitly addressed under Utah law.

If the answer to this first question is in the affirmative (*i.e.*, that the Plaintiffs acquired certain vested rights in their marriages), a second related question is whether, under Utah law, the Defendants can effectively take those rights away by putting its recognition of those marriages on hold. There is a strong presumption under Utah law against interpreting statutes and constitutional amendments retroactively to impair vested rights or to infringe upon constitutionally protected property interests. *Waddoups v. Noorda*, 2013 UT 64; *Miller*, 44 P.3d 663. Plaintiffs contend that, under this strong presumption against retroactivity, Defendants may not use Utah Code §30-1-1.4 and Article I, Section 29 to refuse to recognize Plaintiffs' previously recognized marriage, because doing so would impermissibly impair Plaintiffs' vested rights and infringe upon constitutionally protected interests. In support of their position, Plaintiffs point to other state courts that have found that changes in the law, or constitutional amendments, cannot be interpreted to divest couples of previously vested rights in their marriage. *See, e.g.*, *Strauss*, 207 P.3d 48; *Cook*, 104 P.3d 857. However, this issue has not been explicitly addressed under Utah law.

These two questions are controlling in these proceedings and at this time there appears to be no controlling Utah law on these issues.

## RELEVANTFACTS

1. In 1977, the Utah Legislature amended Section 30-1-2 of the Utah Code to "prohibit[] and declare[] void" marriages "between persons of the same sex" (the "Marriage Limitation Statute").

2. In 2004, the Utah Legislature added Section 30-1-4.1 to the Utah Code, which reads "the policy of this state [is] to recognize as marriage only the legal union of a man and a woman," and "this state will not recognize, enforce, or give legal effect to any law creating any legal status, rights, benefits, or duties [to same sex-couples] that are substantially equivalent to those provided under Utah law to a man and woman because they are married" (the "Marriage Recognition Statute").

3. Also in 2004, the Utah Legislature passed a "Joint Resolution of Marriage" proposing to amend the Utah Constitution by adding Article I, Section 29, to read: "(1) Marriage consists of only the legal union between a man and a woman. (2) No other domestic union, however denominated, may be recognized as a marriage or given the same or substantially equivalent legal effect."

4. This proposed amendment, known as "Amendment 3," was on the ballot in the November 2, 2004 general election. Amendment 3 passed and became effective on January 1, 2005.

5. On March 25, 2013, three same-sex couples living in Utah filed a lawsuit in the United States District Court for the District of Utah against Governor Gary Herbert, then-Utah Attorney General John Swallow, and Salt Lake County Clerk Sherrie Swensen, all acting in their official capacities. *See Kitchen v. Herbert*, 2:13-cv-217 RJS (D. Utah) (referred to herein as *Kitchen*).

6. The plaintiffs in *Kitchen* asserted that Amendment 3 and the Marriage Limitation and Recognition Statutes violated the Equal Protection and Due Process Clauses of the U.S. Constitution. The plaintiffs sought declaratory relief that Amendment 3 and the Marriage

Limitation and Recognition Statutes are unconstitutional under the U.S. Constitution. The parties filed cross-motions for summary judgment.

7. On December 20, 2013, the U.S. District Court in *Kitchen* denied the defendants' motion for summary judgment, granted plaintiffs' motion for summary judgment, and issued a permanent injunction barring Utah officials from enforcing Amendment 3 and the Marriage Limitation and Recognition Statutes. *Kitchen v. Herbert*, 2:13-cv-217 RJS, 2013 WL 6697874 (D. Utah Dec. 20, 2013).

8. The Memorandum Decision and Order by the *Kitchen* court concluded as follows:

> The court hereby declares that Amendment 3 is unconstitutional because it denies the Plaintiffs their rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution. The court hereby enjoins the State from enforcing Sections 30-1-2 and 30-1-4.1 of the Utah Code and Article I, § 29 of the Utah Constitution to the extent these laws prohibit a person from marrying another person of the same sex.

9. The county clerks for Salt Lake County and Washington County began to issue marriage licenses to same-sex couplesthat same day, in accordance with the *Kitchen* court's injunction. Many same-sex couples promptly obtained marriage licenses and solemnized their marriages that same day.

10. Governor Herbert and the acting Utah Attorney Generalthen filed motions with the U.S. District Court and with the U.S. Court of Appeals for the Tenth Circuit to stay the district court's order, pending appeal.

11. On December 22, 2013, the U.S. Court of Appeals for the Tenth Circuit denied Governor Herbert and the acting Utah Attorney General's motion for a stay without prejudice for failing to "meet the requirements of the Federal or local appellate rules."

12. On December 23, 2013, Governor Herbert and the acting Utah Attorney General filed a second motion to stay the U.S. Court of Appeals for the Tenth Circuit. The Tenth Circuit denied the second motion the same day.

13. On December 23, 2013, the U.S. District Court also denied defendants' motion for a stay of the December 20 injunction. The District Court stated in its written Order denying the motion that "The court's Order [of December 20] specifically mentioned Sections 30-1-2 and 30-1-4.1 of the Utah Code and Article I, § 29 of the Utah Constitution. The court's Order also applies to any other Utah laws that prohibit same-sex couples from marrying."

14. On December 23, 2013, following the U.S. District Court's denial of a stay, Governor Herbert and the acting Utah Attorney General filed a third motion with the U.S. Court of Appeals for the Tenth Circuit to stay the district court's order

15. On December 24, 2013, Governor Herbert's office sent an email to his cabinet with the following directive: "Where no conflicting laws exist you should conduct business in compliance with the federal judge's ruling until such time that the current district court decision is addressed by the 10th Circuit Court."(Complaint Attached to Notice of Removal, Dkt. 1, ("Compl."), Ex. B.)

16. Also on December 24, 2013, a spokesman for the Utah Attorney General's Office publicly stated that county clerks who did not issue licenses could be held in contempt of the court and the law.  (*See* Denying same-sex marriage licenses illegal, says A.G. office, Salt Lake Trib., Dec. 24, 2013, accessible at http://www.sltrib.com/sltrib/news/57306295-78/county-sex-marriage-office.html.csp.)

17. Later that day, also on December 24, 2013, the U.S. Court of Appeals for the Tenth Circuit for the third time denied Governor Herbert and the acting Utah Attorney General's motion for a stay.

18. By December 26, 2013, officials in 28 of Utah's 29 counties stated that they would issue marriage licenses to same-sex couples. (*See* Same-sex couples shatter marriage records in Utah, Salt Lake Trib., Dec. 26, 2013, accessible at http://www.sltrib.com/sltrib/news/57310957-78/sex-county-marriages-couples.html.csp.)

19. Governor Herbert and Attorney General Reyes waited until December 31, 2013, to file a request for a stay of the district court's order with the U.S. Supreme Court.

20. Between December 20, 2013, and January 6, 2014, it is estimated that over 1,300 same sex couples were issued Utah marriage licenses. (Same-sex couples denied Utah marriage licenses in court order's wake, Salt Lake Trib., Jan. 6, 2014, accessible at http://www.sltrib.com/sltrib/news/57357867-78/county-marriage-couple-sex.html.csp.)

21. While it is not known how many of those granted licenses solemnized their marriages before January 6, 2014, based on news reports, over 1,000 same-sex couples solemnized their marriages before that date. (*Id.*) It is reported that all but seven counties in Utah issued at least one marriage license to a same-sex couple during that period. (*Id.*)

22. On January 6, 2014, the United States Supreme Court ruled on Governor Herbert and Attorney General Reyes's motion in *Kitchen* and issued the following Order:

> The application for stay presented to Justice Sotomayor and by her referred to the Court is granted. The permanentinjunction issued by the United States District Court for the District of Utah, case No. 2:13-cv-217, on December 20, 2013, is stayed pending final disposition of the appeal by the United States Court of Appeals for the Tenth Circuit.

(Compl.¶ 27.)

23. The Supreme Court's Order stay the *Kitchen* court's decision did not address the legal status of the marriages that same-sex couples entered into in Utah between December 20, 2013, and January 6, 2014.

24. That same day, January 6, 2014, Attorney General Reyes issued a statement that reads in part, "Utah's Office of Attorney General is carefully evaluating the legal status of the marriages that were performed since the District Court's decision and will not rush to a decision that impacts Utah citizens so personally."(Compl. Ex. C.)

25. On January 8, 2014, Governor Herbert's chief of staff issued an email to the Governor's cabinet members instructing them to refuse to grant recognition to same-sex couples married pursuant to Utah marriage licenses (the "Directive").  (Compl. Ex. D.)

26. The Directive begins by stating that soon after the December 20, 2013 injunction, "this office sent an email to each of you soon after the district court decision, directing compliance" with that order. (*Id.*)

27. The Directive explained that the Supreme Court had stayed the *Kitchen* order and stated that "[b]ased on counsel from the Attorney General's Office regarding the Supreme Court decision, state recognition of same-sex marital status is ON HOLD until further notice."  (*Id.*)

28. The Directive then stated that its recipients should "understand this position is not intended to comment on the legal status of those same-sex marriages – that is for the courts to decide. The intent of this communication is to direct state agency compliance with current laws that prohibit the state from recognizing same-sex marriages." (*Id.*)

29. The Directive went on to give the following instruction to state agencies:

> Wherever individuals are in the process of availing themselves of state services
> related to same-sex marital status, that process is on hold and will stay exactly in

>that position until a final court decision is issued. For example, if a same-sex married couple previously changed their names on new drivers (sic) licenses, those licenses should not be revoked. If a same-sex couple seeks to change their names on drivers (sic) licenses now, the law does not allow the state agency to recognize the marriage therefore the new drivers (sic) licenses cannot be issued.

(*Id.*)

30. On January 9, 2014, Attorney General Reyes issued a letter to county attorneys and county clerks which states that he seeks to provide "legal clarification about whether or not to mail or otherwise provide marriage certificates to persons of the same sex whose marriage ceremonies took place between December 20, 2013 and January 6, 2014, prior to the issuance of the stay by the U.S. Supreme Court." (Compl. Ex. E.)

31. Attorney General Reyes continued that "[a]lthough the State of Utah cannot currently legally recognize marriages other than those between a man and a woman, marriages between persons of the same sex were recognized in the state of Utah between the dates of December 20, 2013 until the stay on January 6, 2014. *Based on our analysis of Utah law, the marriages were recognized at the time the ceremony was completed*." (*Id.,* emphasis added.)

32. Attorney General Reyes further indicated that the State of Utah would not challenge the validity of those marriages for the purposes of recognition by the federal government or other states, nonetheless "the validity of the marriages in question must ultimately be decided by the legal appeals process presently working its way through the courts[.]" (*Id.*)

33. Attorney General Reyes also explained that "the act of completing and providing a marriage certificate for all couples whose marriage was performed prior to the morning of January 6, 2014, is administrative and consistent with Utah law" and "would allow, for instance, same-sex couples who solemnized their marriage prior to the stay to have proper documentation in states that recognize same-sex marriage."(*Id.*)

34. On January 15, 2014, the Utah State Tax Commission issued a notice stating that same-sex couples "may file a joint return if they [were] married as of the close of the tax year" for 2013 because "[a]s of December 31, 2013, the Supreme Court had not yet issued its stay of the District Court's injunction."(Compl. Ex. F.)

35. The notice further states: "This notice is limited to the 2013 tax year. Filing information for future years will be provided as court rulings and other information become available." (*Id.*)

36. Within an hour of learning of the *Kitchen* decision, Ms. Gomberg and Ms. Heyborne went to the Salt Lake County building to obtain their marriage license and solemnized their marriage that same day. They were thrilled that their State was finally going to sanction their union and recognize their marriage. (Docket. ("Dkt.") No. 8-1, ¶ 6; 8-2, ¶6.)

37. On December 20, 2013, Mr. Barraza and Mr. Milner obtained a Utah marriage license and were married by Pastor Tom Nordberg of Holladay United Church of Christ that same day. (Dkt. No. 8-3, ¶ 10; 8-4, ¶ 10.)

38. On December 20, 2013, Ms. Evans learned of the *Kitchen* decision. She rushed to the Salt Lake County building and called Ms. Ireland to meet her there. After standing in line for a few hours, the couple received their marriage license, and Salt Lake City Mayor Ralph Becker solemnized their marriage. They were surrounded by other couples and friends, all there to celebrate the right of same-sex couples to finally marry. The only downside to the whirlwind wedding was that their families could not make it there to witness their ceremony. (Dkt. No. 8-5, ¶ 8; 8-6, ¶ 7.)

39. On December 22, 2013, Mr. Johnson got up at midnight and went to stand in line at the Salt Lake County building at 2 a.m. Mr. Shultz joined him at 6 a.m. They got their

marriage license at around 10 a.m. on December 23, 2013, and solemnized their marriage immediately. (Dkt. No. 8-7, ¶ 7; 8-8, ¶ 7.)

DATED this 4th day of February, 2014.

**STRINDBERG &SCHOLNICK, LLC**

/s/ Kass Harstad

Erik Strindberg
Lauren I. Scholnick
Kathryn Harstad
Rachel Otto

*Attorneys for Plaintiffs*