JONI J. JONES (7562)
KYLE J. KAISER (13924)
Assistant Utah Attorneys General
PARKER DOUGLAS (8924)
General Counsel and Chief of Staff
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: jonijones@utah.gov
       kkaiser@utah.gov
       pdouglas@utah.gov

*Attorneys for State Defendants*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JONELL EVANS, STACIA IRELAND, MARINA GOMBERG, ELLENOR HEYBORNE, MATTHEW BARRAZA, TONY MILNER, DONALD JOHNSON, and CARL FRITZ SHULTZ,<br><br>       Plaintiffs,<br><br>v.<br><br>STATE OF UTAH, GOVERNOR GARY HERBERT, in his official capacity; and ATTORNEY SEAN REYES, in his official capacity,<br><br>       Defendants. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION**<br><br><br>Case No. 2:14-cv-00055-DAK<br><br>Judge Dale A. Kimball |

Defendants the State of Utah, Governor Gary Herbert, and Attorney General Sean Reyes, ("Defendants" or the "State" or the "State of Utah") by and through counsel, Joni J. Jones and Kyle J. Kaiser, Assistant Utah Attorneys General, and Parker Douglas, General Counsel and

Chief of Staff, provide the following Memorandum in Opposition to Plaintiffs' Motion and Memorandum in Support of Preliminary Injunction. (Doc. 8.)

## INTRODUCTION

By requesting an injunction mandating that the State provide Plaintiffs "all of the protections and responsibilities given to all married couples under Utah Law," Plaintiffs have requested truly extraordinary relief. They have requested that the Court grant them privileges based on a contingent right springing from a non-final, district court judgment which is on appeal and which has been stayed by the United States Supreme Court. Not only that, but Plaintiffs ask that they receive preliminary relief contingently adjudicating these contingent rights—a decision before a decision before a decision on finality. Given that the state of the law in this area is in flux, Plaintiffs cannot clearly and unequivocally show a substantial likelihood of success on the merits. Given that Plaintiffs have other means to secure most of the benefits they seek and that Plaintiffs have been living under the status quo for years, Plaintiffs cannot show irreparable harm. And given that an injunction would prohibit the State of Utah from enforcing its laws and would subvert the judicial process in both this case and in *Kitchen v. Herbert*, the balance of harms and the public interest disfavor Plaintiffs' injunction. The motion should therefore be denied.

## RELEVANT FACTS

For purposes of their response to Plaintiffs' Motion for Preliminary Injunction only, Defendants do not dispute the facts set out in Plaintiffs' Motion for and Memorandum in Support of Preliminary Injunction. Defendants reserve the right to respond to Plaintiffs' facts if this litigation proceeds.

# **LEGAL ARGUMENT**

**I.  Plaintiffs Cannot Show They Are Clearly and Unequivocally Entitled to an Injunction Requiring the State to Recognize Their Marriages Before The *Kitchen* Appeal Is Final.**

Preliminary injunctive relief is "drastic relief to be provided with caution," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888 (10th Cir. 1989), and only if the moving party can show its right to the relief is "'clear and unequivocal.'" *Schrier v. University of Co.,* 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir. 1991) (further citation omitted)).  Plaintiffs thus have the burden of showing that: (1) they would suffer irreparable injury if the injunction is not issued; (2) the threatened injury outweighs the damage an injunction would cause the State; (3) the injunction is not contrary to the public interest; and (4) there is a substantial likelihood of succeeding on the merits.  *Schrier,* 427 F.3d at 1258 (citations omitted).   Plaintiffs cannot meet their burden on any of the four required elements.

  **A.  *Given the Current Uncertainty of the Law, Plaintiffs Cannot Show They Are Clearly and Unequivocally Entitled to Relief.***

The Tenth Circuit requirement that the moving party show it is clearly and unequivocally entitled to an injunction applies to all types of injunctions.  *Schrier,* 427 F.3d at 1259; *Visa USA,* 936 F.2d at 1098.  Plaintiffs cannot meet this threshold showing because, as they tacitly acknowledge, whether they are entitled to immediate rights in their marriages is far from clear.  Plaintiffs have asked this Court to certify two legal questions to the Utah Supreme Court.  But, as set out in greater detail below and in Defendants' memorandum opposing certification, state law on the status of Plaintiffs' marriage is clear: they currently have no legal rights to their marriages.  What remains to be finally determined is whether *Kitchen* will be upheld or overturned, and thus whether Plaintiffs will, in the future, have property and liberty interests

3

protected by the Fourteenth Amendment of the Federal Constitution.

The lack of clarity in the law may even implicate the justiciability of the controversy. Because Utah law cannot presently provide the due process protection that Plaintiffs seek, because the protection of Plaintiffs' marriages under the federal constitution depends on the outcome of the *Kitchen* litigation, and because this action was filed after the United States Supreme Court stayed the district court's injunction, Plaintiffs may be unable to have their alleged injuries addressed in this litigation, a prerequisite to Article III standing.  *Phelps v. Hamilton,* 122 F.3d 1309, 1326 (10th Cir. 1997) (citation omitted); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60 (1992).

Even if Plaintiffs' position that the Utah Supreme Court must determine whether the State must recognize their marriage is correct, Plaintiffs' assertions that the answers to those questions are not clear (doc.10 at 5) means that Plaintiffs cannot show they are clearly and unequivocally entitled to an injunction.

### B. Because Plaintiffs Seek a Disfavored Injunction They Are Not Entitled to the Relaxed Standard.

Plaintiffs argue that the injunction they seek does not change the status quo, (doc. 8 at 17), so that if they can show the three harm factors weigh in their favor, the substantial-likelihood-of-success factor is relaxed.  But, even if Plaintiffs' request does not alter the status quo,[1] they seek a disfavored mandatory injunction, which requires the higher showing on all four preliminary injunction factors.

Several types of injunctions are disfavored in the Tenth Circuit, including a "mandatory"

---

[1] The status quo for purposes of a preliminary injunction is "the 'last peaceable uncontested status existing between the parties before the dispute developed.'" *Schrier*, 427 F.3d at 1260 (quoting 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948, at 136 (2d ed. 1995)).

4

injunction. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 975 (10th Cir.2004) (*en banc*). An injunction is mandatory "if the requested relief 'affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction.'" *Schrier,* 427 F.3d at 1261 (quoting *O Centro,* 389 F.3d at 979) (additional quotations omitted). Plaintiffs' requested injunction is mandatory because it would require Defendants to act in a particular way—that is, to issue state employee benefits to same-sex spouses and to allow same-sex couples to adopt, for example. (*See* Docs. 1 & 8.) Ordering such relief could also involve this Court in supervising Defendants to ensure compliance with the injunction. Thus, the requested injunction is mandatory, and the relaxed standard does not apply.

> [C]ourts in this Circuit must recognize that any preliminary injunction fitting within one of the disfavored categories *must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.* Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard. Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard.

*O Centro,* 975–76 (emphasis added). Plaintiffs must meet the traditional "clear and unequivocal" standard.

### II. Plaintiffs Cannot Clearly and Unequivocally Show a Substantial Likelihood of Success on the Merits.

#### A. *The State Is Not Violating Plaintiffs' Procedural Due Process Rights.*

Plaintiffs cannot show they are substantially likely to succeed on the merits of their claim that the State has violated their Federal Due Process rights because the ultimate legal status of

their marriages has yet to be determined, and the State is not required to grant marital benefits to Plaintiffs until the underlying legal issues are resolved by the Tenth Circuit Court of Appeals.

The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Its procedural protections are "a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents v. Roth,* 408 U.S. 564, 576 (1972). To succeed on a procedural due process claim under the Fourteenth Amendment, a plaintiff "must have a liberty or property interest." *Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) (internal quotation marks and citation omitted). In this case, the interests that Plaintiffs are asking the State to recognize can best be characterized as property interests—the right to receive spousal health and medical benefits, the right to adopt, the right to establish a home and raise children (doc. 1, ¶¶ 95, 100, 112, 117, 130, and 142). *See e.g., Strauss v. Horton*, 207 P.3d 48 474 (Cal. 2009) (describing rights same-sex couples claimed to have a protected interest in, including "employment benefits, interests in real property, and inheritances" as property rights).

Property interests to which Fourteenth Amendment procedural rights attach are not created by the Constitution, but rather by "existing rules or understandings that stem from an independent source such as state law …." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985) (citations and internal quotation marks omitted). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for . . . . He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972) (emphasis added).

Plaintiffs' right to marry was not created by state law; indeed, state law (both statutory and constitutional) prohibited their marriages. Rather, Plaintiffs' right to marry was created by a

*non-final* federal district court opinion, *Kitchen v. Herbert,* ___ F.Supp. ___, 2013 WL 6697874 (D. Utah Dec. 20, 2013), which has been stayed, *Herbert v. Kitchen*, 134 S.Ct. 893, 2014 WL 30367 (U.S. Utah) (Jan 6, 2014), and is currently on appeal. *Kitchen v. Herbert*, Tenth Circuit Court of Appeals, No. 13-4178.  The very fact that Plaintiffs' right to marry in Utah was created by a non-final order means Plaintiffs' rights in their marriages have not vested, and thus are not entitled to Due Process protection.  *Plyer v. Moore,* 100 F.3d 365, 374 (4th Cir. 1996) (holding no due process violation because plaintiffs did not have vested property interest in rights created by non-final consent decree); *Gavin v. Branstad*, 122 F.3d 1081, 1091 n.10 (8th  Cir. 1997) (" If the right is not vested—that is, if the judgment is not final—it is not a property right, and due process is not implicated . . . .").

Although *Kitchen* was a non-final judgment—one subject to appeal and reversal—the district court declined to enter a stay, so that enforcement of Utah's statutes and Constitutional Amendment banning same-sex marriage were immediately suspended.  *Kitchen*, 2013 WL 6697874 at *30 ("The court hereby enjoins the state from enforcing Sections 30-1-2 and 30-1-4.1 of the Utah Code and Article I, § 29 of the Utah Constitution to the extent these laws prohibit a person from marrying another person of the same sex.").  The *Kitchen* decision became controlling law.  Governor Herbert and the Attorney General properly directed state agencies to comply with the federal order.

But as soon as the United States Supreme Court issued its stay on January 6, 2014, the *Kitchen* order was no longer in effect.  *Nken v. Holder*, 556 U.S. 418, 420 (2009).  The legal effect of a stay is to take the parties back to the status quo, to "the state of affairs before the . . . order was entered." *Id.*  A stay "temporarily suspend[s] the source of authority to act—the order or judgment in question." *Id.* at 428–29.  Thus the law went back to the status quo: resumption

of Utah's statutes and Constitutional Amendment 3, which prohibit Defendants from recognizing same-sex marriages.

Now that Utah laws banning same-sex marriage are in force, same-sex marriages are technically void under Utah law.[2] Under section 30-1-2, certain marriages, including marriage "between persons of the same sex," Utah Code § 30-1-2(5), are "declared void." *Id.* § 30-1-2. Under the plain language of the statute, Plaintiffs' marriages are currently void. "'Void' is commonly understood to mean 'null, ineffectual,' and in the case of marriages, 'invalid from its inception.'" *State v. Chaney,* 989 P.2d 1091, 1096, 1999 UT App 309 ¶ 23 (quoting *Black's Law Dictionary*, 1573–74 (6th ed. 1990)). Notably, the statute does not use the term "voidable." "We assume 'the Legislature used [the] term ["void"] advisedly,' and declined to use the more liberal term 'voidable' in this context." *State v. Chaney,* 989 P.2d 1091, 1096 (Utah Ct. App. 1999) (brackets in original) (quoting *Versluis v. Guaranty Nat'l Cos.,* 842 P.2d 865, 867 (Utah 1992)).

Under the plain language of the statute and Utah case law interpreting it, Plaintiffs' marriages are "invalid from [their] inception" and "void ab initio." *Chaney*, 989 P.2d at 1086, 1999 UT App ¶ 24. In such cases, the marriage is void ab initio even if the marriage were recognized and believed to be valid for many years. For example, in *Van Der Stappen v. Van Der Stappen*, 815 P.2d 1335, 1338 (Utah Ct. App. 1991), a couple's marriage was solemnized on June 15, 1984, but the wife's divorce decree from another man was not entered until July 11, 1984. *Id.* at 1336. The couple held themselves out as married for several years, and divorced in December 1989. A month later, the husband moved to set aside the decree on the ground that the

---

[2] Defendants have repeatedly stated that the validity of Plaintiffs' and other same-sex couples' marriages performed in Utah prior to the stay will ultimately be determined in the *Kitchen* appeal. Defendants are not trying to void Plaintiffs' marriages pending appeal. Rather, Defendants argument shows that Plaintiffs' marriages cannot be recognized under the current state of the law, and, if *Kitchen* is reversed, the marriages will be void under Utah law.

couple's marriage was void from the beginning.

The Utah Court of Appeals agreed because under Utah's marriage statute "a marriage taking place when a party is still married to someone else is void." *Id.* at 1337 (citing Utah Code Ann. § 30-1-2(5) (Supp. 1991)).  "[U]nder section 30-1-2, the marriage of the parties was void at its inception, and no court action was required to establish this." *Id.* at 1338.  *See also State v. Stewart*, 193 P. 855, 856 (1920) (stating that marriage without parental consent is void based on statute if male is under 16 or female under 14).

Plaintiffs' marriages are analogous to the marriage in *Van Der Stappen.*  As in *Van Der Stappen* at the time the marriages were entered into, the couples marrying and the officials issuing licenses and solemnizing the marriages, believed the marriages were lawful.  Once it was finally determined that the marriage in *Van Der Stappen* was not lawful, it was void, even though the marriage had been recognized for years and the couple enjoyed the benefits of marriage, and were even formally divorced for a time.   Here, the legal basis for Plaintiffs' marriage—the *Kitchen* decision—is no longer in effect.   If *Kitchen* is overturned, then Plaintiffs' marriages would have been based on an erroneous, temporary legal ruling—a legal error.  Although *Van Der Stappen* involved a mistake of fact and Plaintiffs' marriages involve a potential mistake of law, the practical effect is the same.

Under section 30-1-2, which is now in effect, Plaintiffs' marriages are not valid and technically void from the date entered into.  Only if *Kitchen* is upheld on appeal and subsection (5), which declares same-sex marriage void, is effectively repealed, will their marriages be valid and all rights and benefits fully vested. Thus Defendants' position that state agencies should not, except in limited circumstances,[3] confer state benefits to same sex couples, is lawful and

---

[3] The State Tax Commission is recognizing same-sex marriages that were entered into by

reasonable. That is because Plaintiffs' rights in their marriages cannot be determined until the *Kitchen* litigation is fully resolved.

Plaintiffs are not likely to succeed on the merits of their claim that their marriages—solemnized after *Kitchen* was issued but before it was stayed—are valid and that all rights attendant to those marriages are fully vested. On the contrary, under well settled federal and state law, Plaintiffs' marriages are now void under Utah law. Whether Plaintiffs ultimately will prevail, that is, if *Kitchen* is upheld in a final, non-appealable decision, remains to be seen. Certainly, the Defendants have presented substantial arguments showing the constitutionality of the challenged laws. (*See* Brief of Appellants Gary R. Herbert and Sean D. Reyes, *Kitchen v. Herbert*, Case No. 13-4178, United States Court of Appeals for the Tenth Circuit, a copy of which is attached as Exhibit 1.) Thus it is not clear that Plaintiffs have currently enforceable liberty or property interests in their marriage, and they therefore cannot show Defendants are violating their Fourteenth Amendment rights.

### B. The Rule Barring Retroactive Application of Laws Does Not Apply to Plaintiffs' Marriages Because They Were Married After Utah Laws Banning Same-Sex Marriage Became Effective.

Plaintiffs were not married when Utah's statute banning same-sex marriage was passed, and they were not married when Amendment 3 was enacted. These laws are therefore not being applied retroactively to their marriages. Rather, as set out in section II(A), above, Utah's laws banning same-sex marriage were temporarily suspended when *Kitchen* was issued. When the

---

December 31, 2013. (*See* Tax Notice, Compl. Ex. F.) The Federal government is recognizing Utah same-sex marriage. *See* "Holder: Government to Recognize Gay Marriages," *The Washington Post*, (Jan. 10, 2014), *available at* http://wapo.st/1gphCf3. Under Utah law, marriage status is determined by federal tax filing. *See* Utah Code §59-10-503(1). The Tax Commission thus decided to recognize the 2013 same-sex marriages for purposes of Utah tax filings, but with the proviso that these couples may be "required to file amended 2013 tax returns based on future court rulings." (*See* Tax Notice, Compl., Ex. F.)

United States Supreme Court ordered *Kitchen* stayed, section 30-1-2(5) and Amendment 3 were again in force. Plaintiffs' rights to their marriages thus sprang from a non-final district court judgment, which has been stayed and is now on appeal.

"[T]he vested rights doctrine . . . provides that '[i]t is not within the power of a legislature to take away rights which have been once vested by a judgment.'" *Phyler v. Moore,* 100 F.3d 365, 374 (4th Cir. 1996) (quoting *McCullough v. Virginia*, 172 U.S. 102, 123 (1898)). However, the doctrine applies "only when a *final* judgment has been rendered." *Id.* (emphasis added). The *Kitchen* order which gave Plaintiffs the right to marry in Utah is not a final order, and therefore their right to marry did not vest. That is because if *Kitchen* is reversed, the legal effect is that the judgment never existed. "To 'reverse' a judgment means to "overthrow, vacate, set aside, make *void*, annul, repeal, or revoke it." *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1096 (10th Cir. 1991) (quoting *Black's Law Dictionary* 1319 (6th ed. 1990)) (emphasis added). A judgment reversed by a higher court is "'without any validity, force or effect, and ought never to have existed.'" *Id.* (quoting *Butler v. Eaton,* 141 U.S. 240, 244 (1891)). Because the validity of Plaintiffs' marriages were based on the *Kitchen* decision which is not final and may be reversed, the rule barring retroactive application of the law does not apply to Plaintiffs' marriages. Plaintiffs' argument in section I.B of their brief (doc. 8 at 22-28) and the case law cited therein, is therefore inapplicable.[4]

Plaintiffs' primary case, *Strauss v. Horton*, 207 P.3d 48 (Cal. 2009), is readily distinguishable. Prior to *Strauss,* the California Supreme Court had ruled in *In re Marriage Cases*, 83 P.3d 384 (2008), that California statutory law banning same-sex marriage violated

---

[4] Defendants recognize that both federal and state law generally prohibit retroactive application of legislation. The rule against retroactively would apply if Defendants were refusing to recognize same-sex marriages that were entered into in Utah, recognized in Utah, and valid in Utah *before* section 30-1-2(5) and Amendment 3 became effective. But that is not the case.

11

California's constitution. 207 P.3d at 122. That ruling was a final, non-appealable order. Many same-sex couples married in reliance on that ruling. *Id.* at 121. Subsequently, California voters passed Proposition 8, which amended the constitution to prohibit same-sex marriage. The California Supreme Court ruled that the constitutional amendment could not be applied retroactively to take away the rights of same-sex couples who married after the *Marriage Cases* was decided, but before Proposition 8 was passed. *Id.* at 121.

*Strauss* is consistent with the vested rights doctrine, because the marriages at issue were entered into based on a final order, and thus the couples' rights in the marriages had vested. (*See also* Defs' Memo In Opp to Motion to Certify, at 10, incorporated by reference (explaining why *Strauss* is inapposite). Here, the marriages were entered into after Utah's statutes and Constitution prohibited same-sex marriage, and pursuant to a non-final order subject to reversal. In the unique circumstances here, the bar against applying legislation retroactively does not apply.

### III. Plaintiffs Will Not Be Irreparably Harmed If the Court Does Not Issue an Injunction.

Should the Court decline to issue the requested preliminary injunction, Plaintiffs will suffer no irreparable harm because they have several means of otherwise protecting their asserted interests. For example, if a Plaintiff-partner wishes to participate in medical decisions, the couple can draft a medical directive, designating each other as having the authority to make medical decisions in an emergency. Further, the couples can grant power of attorney for other types of legal decisions. In the case of same-sex parents, a Plaintiff can list their partner as a person authorized to pick up the child from school and list the partner as an emergency contact. Although Utah law does not allow the State to recognize same-sex marriages, *see* Utah Code Ann. § 30-1-4.1(1), Utah law does not preempt "contract or other rights, benefits, or duties that

are enforceable independently" of same-sex marriage rights. Utah Code Ann. § 30-1-4.1(2).

If *Kitchen* is upheld, Plaintiffs will have access to rights attendant to marriage in Utah. Although Plaintiffs may have to wait some time before the litigation in *Kitchen* is finally resolved, they have not shown that any potential injury they would suffer would be irreparable, as is their burden in seeking extraordinary relief. If *Kitchen* is upheld, a couple could then apply for medical benefits, petition for adoption, move to have a parent's name added to a birth certificate, etc. The fact that these Plaintiffs have all been living in Utah for years without enjoying the rights to marriage—even though they have the option of living in a state that would recognize their marriage—supports the conclusion that the harm Plaintiffs suffer is not irreparable.

Plaintiffs point to statements that Defendants made in their petition for a stay to the United States Supreme Court as conceding that if this Court does not issue an injunction, Plaintiffs will be irreparably harmed. (Pls.' Mem. in Supp., doc. 8, at 33.) In the petition, Defendants stated that:

> same-sex couples who choose to marry during the period before the Tenth Circuit and this Court resolve this dispute on the merits will likely be irreparably harmed *without a stay* . . . [and] will likely suffer dignitary and financial losses from the invalidation of their marriages if appellate review affirms the validity of Utah's marriage laws.

(Application to Stay, Ex. J to Plaintiffs' Memo in Supp., doc 8-10, at 4 (emphasis added).) Defendants stand by their statement. But to be clear, the point was that if *a stay was not issued stopping marriages* in Utah pending final resolution of *Kitchen,* couples who marry under *Kitchen's* authority will suffer if *Kitchen* is reversed. That is not the same as saying that Plaintiffs will be irreparably harmed if this Court does not issue an injunction requiring the State to immediately recognize all rights to Plaintiffs' marriages, regardless of the outcome in *Kitchen.* Indeed, if *Kitchen* is reversed, and Utah law stands, the marriages that took place after the district

court's decision are void as a plain matter of Utah law. Defendants' statement was made as they faced a Hobson's choice in requesting the stay and in attempting to minimize the harm caused by the legal confusion resulting from the district court's refusal to stay its decision in the face of certain appeal.

Defendants recognize and acknowledge that if *Kitchen* is reversed, Plaintiffs will suffer dignitary and possibly financial injury. (*Id.*) However, Plaintiffs entered into marriage in Utah with full knowledge that Defendants vigorously sought a stay while appealing the *Kitchen* decision. They also did so with full knowledge that there is a distinct possibility *Kitchen* will be reversed and as a consequence their marriages rendered invalid in Utah. Defendants do not concede that injury Plaintiffs may suffer if *Kitchen* is overturned is greater than injury the State would suffer if it is forced through an injunction to not recognize its laws banning same-sex marriage. Such an injunction would cause more harm to the State, as set out below.

### IV. The Balance of Harms Favors the State.

In deciding to stay the *Kitchen* decision, the United States Supreme Court necessarily decided that the State would suffer more harm if Utah's statute and constitutional amendment were enjoined. *Hollingsworth v. Perry*, 558 U.S. 183, 189 (2010) (per curium) (when ruling on stay, court must consider "likelihood that irreparable harm will result *from the denial of a stay*") (emphasis added)). The irreparable harm the State would suffer would, in effect, be a continued enjoinment of Utah's statutes and constitutional amendment banning same-sex marriage. *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). That is, if this Court ordered the State to grant the couples all the benefits of marriage, the State would be required to

act as if its laws were no longer in effect.  But, as set out in section II(A), above, the Supreme Court's stay put the parties back to where they were before *Kitchen*:  Utah's laws are in effect.

The Supreme Court also "balance[s] the so-called 'stay equities'" when deciding whether to issue a stay.  *San Diegans For Mt. Soledad Nat. War Mem'l v. Paulson,* 548 U.S. 1301, 1302 (2006) (Kennedy, J., in chambers).  No doubt the Supreme Court recognized that the validity of marriages performed after *Kitchen* but before it issued the stay would likely be called into question, and probably "put on hold" if *Kitchen* was stayed.  Nonetheless, the Court concluded a stay was necessary.

Given that the Supreme Court has implicitly balanced the harms and ruled in favor of the State, this Court should likewise rule that the State stands to suffer greater harm if an injunction is issued than Plaintiffs would if their request is denied.

### V.     An Injunction Mandating that the State Not Comply With Its Laws Is Not in the Public Interest.

Finally, an injunction is not in the public interest.  Plaintiffs seek recognition of their marriages, which is specifically prohibited by the Utah Constitution and its laws.  Utah Const. art. I, § 29. The constitutionality of those statutes is at issue in *Kitchen,* and every person in the State of Utah—and indeed, in the United States if the *Kitchen* case ultimately is resolved by our highest court—has an interest in ensuring the underlying issue in *Kitchen* is resolved fully and fairly.  Judicial action at this point would upset the status quo imposed by the Supreme Court stay and threaten "the orderly, decorous, rational traditions that courts rely upon to ensure the integrity of their own judgments."  *Hollingsworth*, 558 U.S. at 197.  Once *Kitchen* is fully resolved, Defendants and Plaintiffs will know the status of their marriages.  Until then, an injunction requiring Defendants to recognize Plaintiffs' marriages and provide marital benefits is premature and unwarranted.

"The power to issue a mandatory preliminary injunction should be exercised sparingly," because to issue a preliminary injunction would make it exceedingly difficult to "unring the bell" later, and because management of the mandatory injunction is excessive. Wright & Miller Federal Practice & Procedure § 2948.2, *cited in* Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 25 (2008). If this Court grants Plaintiffs' injunction and they are provided benefits of marriage now, and then if *Kitchen* is later reversed, Plaintiffs' marriages will be void under Utah law. How will the State and Plaintiffs address the problems such a scenario would create? Neither Plaintiffs nor the State should be subjected to this possibility.

## CONCLUSION

Whether same-sex marriage is constitutionally required is an incredibly important legal and social issue. But that decision will be made by another court in another case. This case is not about gay marriage. It is about plaintiffs who knowingly relied on a non-final, trial court order to receive a marriage license, and now seek to gain all the benefits of that license immediately without allowing the courts to decide whether that first non-final order was right. Because future contingencies will determine if Plaintiffs' marriages are valid, Plaintiffs cannot now show that they have a vested property interest in their marriage that is entitled to federal Due Process protection. This Court should accordingly decline to grant a preliminary injunction.[5]

---

[5] In the event this Court rules that Plaintiffs are entitled to their requested injunctive relief, Defendants request that the Court stay its decision to allow Defendants to seek interlocutory appeal. *See* 28 U.S.C. § 1292(a).

DATED this 21st day of February, 2014.

                                 OFFICE OF THE UTAH ATTORNEY GENERAL

                                 /s/ Joni J. Jones
                                 JONI J. JONES
                                 KYLE J. KAISER
                                 Assistant Utah Attorneys General
                                 PARKER DOUGLAS
                                 General Counsel and Chief of Staff
                                 Attorneys for Defendants